This is time for the embankment hearing in the case of Sanchez v. McCasey. Counsel ready? Okay. Okay, you may proceed. Good afternoon, your honors. Frank Sproul is appearing for Petitioner Mario Sanchez. At the outset, not at all surprisingly, I believe this issue has been squarely addressed by the Sanchez and Moran panels, and I believe they came up with a coherent interpretation of the cancellation statute that is absolutely congruent with the statute and congressional intent. Could you help me with something on what you say about congruent with the statute? I found the statute difficult without cutting and pasting the thing so that I could just have the right section. So I did that. And here's the scheme that I get, and I want you to tell me where I'm wrong. Moran, of course, is not binding on us. We're deciding what to do about that. The first piece, B-1, lets the attorney general cancel removal for an alien with 10 years good moral character, not convicted of certain offenses in exceptional and extremely unusual hardship. Clear. Then we look at the definition of good moral character down at F, and it says a person is not of good moral character if he's a member of certain classes. One of the classes is the 6E class. So we look at the 6E class to see what class takes you out of good moral character, and it says you don't have good moral character if you smuggled in an alien. However, there's an exception, a kind of amnesty for people that did it before 1988 for spouses or parents or children. That exception is no use here. Absolutely. Then there's a waiver provision down at 11, I think it is. The attorney general can waive this 6E provision, the alien smuggling provision, but it seems to say that he can only waive it for people that have green cards. It says he can waive it in the case of an alien lawfully admitted for permanent residence. Now, I can understand that. I mean, it may not like it, but Congress gets to decide what they like. And it looks like you can waive alien smuggling, or the attorney general can waive alien smuggling, for people with green cards who smuggle in their children or spouses, but not for illegal immigrants or illegal aliens who smuggle in children or spouses. It seems like a clear condition there that the person who's getting the waiver has to have a green card, and it's no use to Sanchez because he doesn't have a green card. What am I missing? It seems, once I do the cut and pasting, it seems actually not that hard. What am I missing? Well, we needed a more surgical cut than you're employing here. In the cancellation statute itself, we left out the language. Give him an anesthetic for the cut. Help me cut. Of course. This is one of these people who seems like a good citizen in every way, except he's not a citizen. It would be nice to give him a break, but I don't see how. Well, I think we can. And, again, in 240A.V.1, you reference that the attorney general may cancel removal, comma, and adjust the status of an alien to that of lawful permanent residence. Now, we presume Congress is careful when they use language. Adjustment of status is a very precise term of art. A party who is adjusting their status is seeking admission. That's how you get a green card. Right. And if you look at the waiver at D11, it isn't only for people who are residents,  Before you go on, would you stop right there? It says, for an alien seeking admission or adjustment of status as an immediate relative or immigrant under Section 1153A. Right. And I submit to you that that's a disjunctive statute. There are two people they're talking about. They're talking about an alien seeking admission, and that is a party making an entry. We don't have that here. Well, that's our argument in terms of making sense of the statute, that when you are adjusting your status, you are assimilated into the position of a party making an entry. But in the case of an alien seeking admission, that's when we cross-reference that. This is the cross-referencing cut and pasting we're talking about. The language in the waiver at D11 talks about an alien seeking admission. The cancellation statute states the attorney general is doing more than canceling removal, that the party seeking cancellation is adjusting his or her status. I mean, that's essentially what Moran did. They used the language, they said we were going to replace the terms for admission with cancellation removal. But I believe if you, again, to, you know, this language. Is your fellow seeking an adjustment of status? In the cancellation statute, the attorney general may cancel removal. No, I wasn't asking you right now in this question what the statute says. I was asking you what the record says about Sanchez. Has he applied for an adjustment of status? By seeking cancellation of removal, he's attempting to adjust his status. But that's not what we're doing. But could you, let me just follow this line of thought through. You're reading in D11 the line, and in the case, you're reading and as or in the disjunctive, I take it. Right. Okay. And so now we're apparently looking at in the case of an alien seeking adjustment of status, but it goes on to say as an immediate relative or immigrant under Section 1153A. Now, he's not doing that. No. My position, he's seeking admission, and or means or. But there are two separate parties contemplated in that waiver, D11. The party seeking admission, which is what a cancellation of removal applicant is doing, and then the adjustment of status of people based on immediate relative position. But other places in the statutory scheme, when they're talking about admissibility, they're not using it in the way that you're using it, are they? I mean, you're giving a new, this is a new meaning to admission, and I understand why you're saying it, because if when you, because the language that, you know, part of what the language that you have to deal with is whether inadmissible or not, you know, whether does, you know, what effect that, is that language surplusage, which I would say that there's a good argument that it's not, and therefore it's not the same as good moral character. That's why they say both of them. Well, you're back at the definitional section of good moral character, whether admissible or not. Now, that is not dispositive of this argument. I mean, the reason Congress has. Why not? Because it just says admissibility is irrelevant. Well, no, I think the reason. And it makes sense for it to be, because you can require good moral character for canceling removal, logically, and not do so for purposes of admission in the discretion of the Attorney General. Right. But I believe that language there regarding whether admissible or not exists because the good moral character section applies in numerous contexts, in cancellation removal, in voluntary departure, in citizenship. So I don't think Congress didn't want people to be in the position of Gonzales, who says, well, since I'm not being, since I'm not inadmissible, I can still show good moral character. That's whether or not, whether inadmissible or not mean it, not whether inadmissible or not. It means it's irrelevant. Never mind it, regardless of it. Put it aside. And if you do, you're left squarely with an issue of law, whether he had or hadn't been moral character, period. Right. But I guess that, again, we're back in cross-referencing, which I think you do in all of immigration law. Without it, we'd all be left in the dark. I mean, that. Well, I understand, but the cross-reference is to the definition of, to the definition, and the definition is alien smuggling. It isn't to whether the person is admissible or not. It's explicitly not to whether he's admissible or not. Well, let me ask you a different way. If I take your subsection 11 and I list out the people who could come within the waiver, my question is, who wouldn't be in the waiver? So we have people who would be a lawful permanent residence. Okay. That's one category of people. We have, in your view, alien seeking admission, Category 2. And then we have people who want an adjustment of status who are already here under a certain visa status, but they're doing it on the basis of an immediate family member. So can you tell me who wouldn't be eligible under this category? Well, obviously a party who was not eligible for cancellation removal clearly would not be. A party who was entering with false documents. So, in other words, you wouldn't be eligible for cancellation of removal, say, for example, because you didn't meet the statutory year. Precisely, right. I mean, a lot of aliens are seeking, you could be seeking admission on a non-immigrant visa, and I believe under the plain language of that waiver, that party would be eligible for the alien smuggler waiver if otherwise admissible. So anybody seeking admission. Lawful admission. And the fiction of the cancellation statute, based on clear statutory language, again, Congress could have said the Attorney General may cancel removal of and confer residency upon. There's a reason they used adjustment of status. I mean, we assume Congress is careful with language. They're aware that there's 100 years of law, that a party who is adjusting a status is assimilating to the position of an entry, and thus the waivers of inadmissibility apply. So then what meaning do you give to that one tricky phrase in 1101F, whether admissible or not? Again, my position, the reason they have that in there is not just for the cancellation statute. It's for every statute because good moral character is a predicate to so many different forms of relief that they wanted to make it clear we're describing disqualifying behavior. If you're not inadmissible, you still may be described in that section. In fact, 101F is very careful to say an alien described herein. I mean, one could argue whether inadmissible or not is surplus. If you're just stating that it's something described there, you're not talking about inadmissibility. You're just creating a category of disqualifying behavior. For Sanchez to make sense, which I hope it does, you have to take it as an a prior assumption that there's something a little bit different about a cancellation removal applicant, and there's a reason Congress used the words adjustment of status. I mean, that's the way to make Sanchez and Moran cohere. I mean, if you don't accept that a prior assumption, I'm in trouble. But I'll go back. He is or is not seeking an adjustment of status. I thought you said he wasn't. He's coming here as an admissible. When you're adjusting your status, you are essentially seeking admission. And that's very clear in other areas. Isn't he first seeking cancellation of removal? He has to qualify. Right. He has to qualify. But to qualify, the attorney general does two things in 2048B1. He cancels the removal of, meaning the grounds of removability, admissibility, any other grounds. And then you adjust the status of. And that has specific meaning in immigration law. And it always has. Do you have to apply for adjustment of status? Or do you just assume that it goes with the term? Because he never applied. Well, I think Sanchez says that, really, that when you're applying for. That's what we're.   Cancellation of removal. That's what we're here for. I don't much care what it says. Sure. I mean, the question is, do you have to apply for it? Because he never did. Well, cancellation of removal is coextensive with applying for adjustment of status. If you marry the citizen, you're seeking residency. And if you're asking to have a number of things waived. But doesn't he have to, under the sections that you, the waiver that you want him to qualify, doesn't, if you assume that, doesn't he have to be lawfully admitted for permanent residence or temporarily proceeded abroad? And, you know, he didn't. And he never did any of those. Well, he's seeking admission. That's the section in D11 that I'm. So we have to say that cancellation of removal is the same as seeking admission. In order for you to prevail. We have to accept that. Sure. But I don't think I'm just willy-nilly coming up with this idea. I mean, Sanchez. What's your best authority that that's true? The plain language of the cancellation statute. Do you have any authority, apart from the way you read that language, that equates cancellation of removal with admissibility? Well, I think you can't understand Sanchez. I mean, this is. I'm not talking about understanding Sanchez. My question is, do you have any authority that equates the two? No. Because that's why we're all here today. I mean, I think we're trying to make, you know, sense of the Sanchez Moran cases. And that's. Both Sanchez and Moran are on the table. Precisely. We're trying to be logical here. Right. And, you know, absent Sanchez Moran, I would say, yeah, of course, there's no black letter law. If I had that, we probably wouldn't be here. I mean, precisely that's why we're trying to make sense of this statutory scheme. You know, you've forgotten more about immigration law than I've ever known. So I'm looking to you to say, what is your best pitch for equating the two? Well, I mean, I quoted abundant case law in the sense that a party who is adjusting their status is assimilated into the position of a party making an entry, but cancellation statute specifically refers to adjustment of status. I believe that's coherent. And, again, I did quote an unpublished case, but that, you know, it was published subsequent to January 2007, so it has some persuasive authority. And that was a cancellation applicant, and he had 30 grams or less of marijuana. The panel there said it was ineffective assistance of counsel to not apply for a waiver of an admissibility. Well, it wouldn't be ineffective assistance of counsel if it wasn't cognizable. You've got an obvious problem on that. Number one, it's not published, so it isn't binding. And it's kind of an analogous problem to what you've got on this subsection 11. Everything you've got one hypothetical step following on another to where it isn't the case. I look at 11, and you need an alien lawfully admitted for permanent residence, which Sanchez isn't. You need a person who's otherwise admissible as a returning resident, which Sanchez isn't. You've got a need for one of two alternatives, an alien seeking admission, which Sanchez isn't, or an alien seeking adjustment of status as an immediate relative, which Sanchez isn't. To say they're coextensive, it makes no sense to me. A foreigner may marry an American and want to take the spouse back to England or someplace, and a foreigner may want to get a green card on account of being a spouse. All sorts of possibilities where they're not coextensive. You seemed to say earlier, as I understood it, that he was an alien seeking admission. That's clear. I have read earlier your argument being understood, maybe not because I didn't read it carefully enough. I have thought because of the cancellation of removal statute that they were essentially the same thing. Cancellation of removal automatically includes adjustment of status. Are you saying that he is not within the adjustment status clause of D11 and that we have to decide that cancellation is functionally the same as admission? Precisely, based on the precise language of the cancellation statute. Adjustment of status equals a party seeking admission. Okay, and is there, just because I don't, like Judge Reimer, you all know a lot more about immigration procedures and details than I certainly do. I'm trying to understand, if we were to say that he had applied, gone through the normal route of applying for admission in addition to seeking cancellation of removal, is that the one flaw in what he failed to do, in your view? Well, if we were to say, sorry, you have to apply for admission in the normal course of events. Well, if he was applying for admission in the normal course of events, we'd have a very different case. I mean, presumably, you're talking about a scenario where you're married to a citizen or something. That's classic adjustment of status. And again, it's important to understand, if you're adjusting your status in the United States and you've been here for 15 years, the grounds of inadmissibility apply to adjustment of status. It's a legal fiction, but that's the law. Didn't you just distinguish in a B.B. between exclusion and removal? Right. Well, that was an equal protection challenge. True. But the basis for it was that they're different things. Right. But I'm not making an equal protection challenge here. I'm saying there's no disparate treatment at all, that it's perfectly coherent. You are saying we have to equate exclusion and removal. No. I'm saying we have to equate the cancellation removal statute, wherein the attorney general is adjusting the status to a party seeking admission. I'm not making any distinction. I'm saying that's a plain reading of the law. And looking at the statutory scheme of the last 100 years, it's perfectly coherent. Counsel, how do you score that with Khorasani? It seems to me that if we rely on Moran, which you would like us to do, then we have to overrule Khorasani. Or looking at it from the government's point of view, the reverse. How do you score those two cases? To me, that's not an insuperable burden. I mean, there couldn't be two parties differently situated than Khorasani and Sanchez. Voluntary departure, you're waiving all forms of relief and you're departing the United States. In our context, you are seeking admission if you accept that. But certainly, if you accept that, then there is no conflict between Khorasani and Sanchez. They are truly apples and oranges. But the definition is the same. Well, they reference good moral character, but it occurs in the context of a V.D. person. That's the phrase we use. As the Supreme Court pointed out, that's essentially a plea bargain. You're giving up all rights. You're not seeking admission. You are departing the United States. And therefore, you know, the good moral character and the waiver doesn't apply. Again, the only reason the waiver applies, in our view, is because you're seeking admission. A voluntary departure applicant is doing precisely the opposite. Let me just ask some other possible distinctions with the family waiver. If you go to 1101F and they set out the classes of individuals that fall in there, that's where we get the reference to 6E, correct? Correct. Okay. But then they list two other ones, and I'm wondering if there's some significance in this. Two of the other ones they list, if I read them correctly, 2D. Is that the drunkard? No. 2 capital D and then 10 capital A, practicing polygamists. Those two don't have waivers associated with them, but this one specifically does. Do you think we can read some meaning into that construct? Well, certainly. I mean, there's more than, you know, there's a waiver of the crimes of moral turpitude. If you only had one crime, the petty offense exception, the 30 grams or less of marijuana. I mean, the fact that they list these disqualifying behaviors in other sections of the Act, there are waivers. The question is, when do the waivers of inadmissibility apply? And for our purposes, if you don't believe that a cancellation applicant is seeking admission, it's a house of cards and my argument does collapse. But if it doesn't, then it's perfectly coherent. We don't really, it's not quite as complicated as it seems in terms of doing a great deal of cross-referencing. If you take the a priori assumption that the Attorney General is adjusting the status of a cancellation applicant when it's granted, then the waivers of inadmissibility do apply and they should apply. Okay, so let me just, I know there, of course, there's waivers in the various crime situations, but are there any waivers available for 2D and 10A somewhere else hiding in those thousands of pages of immigration code? Polygamists and, no. No, you know, the... So that one's kind of, I mean, it's just saying, let's say, let's make him, for talking purposes, a polygamist. If he were a polygamist and so he would be under 10A, end of story for him and you wouldn't be here, is that correct? Certainly, and there are, you know, some obvious bars. So that's just a flat-out bar. Right. You know, false testimony under oath is a Carthaginian bar. I mean, you're just never going to get a green card. I mean, those things, but I'm not sure, since Congress saw fit to have waivers for other sections here, obviously the intent was family unity, then, again, we just have to take it as a given that cancellation is coterminous with admission. I mean, that's really my central argument. If it's not accepted, then I agree. I'm in trouble. I mean, the first part of the argument is key for me, and if it's not accepted, there are some difficulties. Counsel, as we read the D-11-2, it talks about admission or adjustment of status as an immediate relative or immigrant. You don't claim your client is an immediate relative or immigrant under Section 1153, do you? No. And so when you argue to us that cancellation of removal equals admission, and I've heard you say otherwise, also adjustment, then this doesn't talk just about adjustment itself. It talks about adjustment of status as an immediate relative or immigrant, which your client is not. So then how do I apply it? Well, I guess maybe it didn't make sense. Peter, my position is that last sentence is disjunctive, that it's referring to two separate classes of people, an alien seeking admission or adjustment of status based on a family reason. I understand that, but then in the immediate previous sentence, or immediate previous clause, you say in the case of an alien lawfully admitted for permanent residence and in the case of an alien seeking admission and adjustment, you want to make those disjunctive with the and. I believe it refers to three separate classes of people, returning residents, you know, a long-time resident. Well, they all talk about and, and yet you want to make them into different ones. Now we have an or, and you still want to make them disjunctive. Well, I think I'm using or in the Webster's sense of the word. Well, we had and in the previous situations, and you also made those disjunctive. Why do I have to have a lawful permanent resident in every situation? Look, quite the contrary. I mean, I believe the fair reading is that it really refers to three separate scenarios, the scenario of an alien lawfully admitted returning who's smuggling a spouse for a child, an alien seeking admission, or an alien who's formally applying for adjustment of status. And that's, well. But is your client, is adjustment, if you are asking for adjustment of status as an immediate relative, is that a subset of asking for admission? No. My point is that he is seeking admission. Stop right there. No, no. That's not my question, so I might maybe just ask it again. If someone is asking to be adjusted as an immediate relative, are they also, for example, if they're in a cancellation or removal proceeding, are they also asking admission? Yes. I mean, that is sort of my central argument, that a party who is seeking adjustment, even if they're in the United States and have never left for 20 years, under immigration law, that party is a fiction, perhaps, is seeking admission. So here, though, trying to figure out the statutory language, the person seeking an adjustment for family purposes is a subsection of admission. So really, under your reading, that second clause, or we'll call it the third because there's three categories, as you've nicely pointed out, that third category, would that be superfluous because it's really subsumed under admission? It could be, although there are a number of different types of adjustment. There's adjustments based on, you know, employment and so on, and you can see how Congress would not necessarily want to or why would there be family unification in the case of adjustment of status based on an employment-based green card. So on the face of it, it could seem surplus, like surplusage, in the sense that if you're seeking adjustment as a family-based, you are seeking admission. But there are people that are adjusting their status not based on family-based. We have three minutes left. How did your client, how did his wife get here? That was a much earlier argument. They came together, and he, in all due respect. Did he drive down and smuggle her across the border? They both entered with the help of what is colloquially referred to as a coyote. I mean, my initial argument was that he's not a smuggler, he's a principal, and you can't aid and abet your own crime. That's all been changed. But wasn't he here in April of 1988? Right. And didn't he go back to get her? Right. And doesn't the testimony that you had say, how did you enter? Well, we came illegally. Did you pay a coyote to help you cross the border? Yes. And did you pay for you and your wife? And you say yes. And did you make a contract with him at the border prime? Yes. All of that, if I'm on a substantial evidence ruling, which is really what you're arguing, I can't go away from the IJ, can I? No. I mean, that was, without Sanchez and Moran, initially I was arguing that he's not a smuggler. For purposes of our argument today, he's a smuggler. I mean, I'll accept that, even though he was arguably a co-defendant. I don't think that's true. Okay. Can I reserve a little time? If you've got that. We'll hear from the other side. Good afternoon. May it please the Court. Tom Dupree on behalf of the United States. The good news is that while this is admittedly a complex statute, I don't think it's quite as complex as my good colleague was suggesting, and I certainly don't think this Court need engage in any sort of interpretive gymnastics in order to resolve this issue. I think the easiest place to begin is with the phrase that I know Judge Reimer and I think also Judge Callahan had focused on, namely the provision set forth in Section 1103 that refers to good moral character, where it says regardless of whether or not, or excuse me, the provision that says whether or not someone is admissible has no bearing on good moral character. That's in Section 1101. Right. That's why I said I'd correct myself. Right. All right. That phrase I think is key because that really is the heart of the issue, which is to say that Congress has specifically distinguished the idea of good moral character from the idea of inadmissibility. And so the waiver provisions that we've been discussing, the ones set forth in subsection D11, simply has no bearing on the good moral character analysis. Well, would you say that that would, if you took appellants' or petitioners' view, that it would make the inadmissible or admissible or inadmissible surplusage, and we're not supposed to do that? If it's there, it's there for a reason? Or what would be your statutory argument on that? Well, I certainly think it is there for a reason. I certainly think that if, under the petitioner's reading, that phrase would be rendered surplusage, because what Congress is saying is that you can be of bad moral character and yet be inadmissible, you could be of good moral character and be inadmissible, that one outcome doesn't necessarily control the other. So that's our understanding, and that's why I think a lot of the petitioner's argument is misplaced, in the sense that he's arguing that he is entitled to the D11 waiver of inadmissibility because he's seeking admission. I don't think that's right, but even if somehow he were right, it wouldn't resolve the good moral character inquiry. In other words, at the very most, it would say he's admissible, but it doesn't get him over the good moral character obstacle. That's the problem. I think more generally, and this, I think, Judge Reimer had asked him whether there's any authority for equating his, equating the notion of an alien seeking cancellation and an alien seeking admission. I'm certainly not aware of any authority. Certainly the statute itself doesn't suggest that admissibility is a prerequisite to cancellation and adjustment. And I think that the cancellation statute, which does allow for adjustment, but the cancellation statute differs from the other adjustment of status provisions, namely Section 1255 of Title VIII, which does require the alien to establish his admissibility. So I think that Congress quite clearly here did not set forth admissibility as a prerequisite in the 1229B cancellation of removal statute. And so I think his argument is misplaced for that reason as well. I don't quite, can you just, this is difficult, so bear with me. But going back to your reading of F3, whether admissible or not, somebody who is in 6E is not of good moral character. Okay, so we go to 6E, and 6E does have within it waiver authorized. So what is it, you're saying, well, admissibility is irrelevant. Okay, so it's irrelevant, but it says waiver authorized and directs us to go to D11, and D11 by its terms says that you can have a waiver in the case of an alien seeking admission. Now, why does it use the term admission if what you're saying is admissibility is irrelevant? Well, a number of points, Judge Fischer. I guess the first point is that I do not share Petitioner's reading that there are really three categories in the D11 waiver statute. In other words, I read it as there being two categories. I think this is the version Judge Smith is articulating, in that you can qualify for the waiver if you're a lawful permanent resident, which Petitioner is not, or if you're seeking admission or adjustment under Section 1153. So you are reading and in the disjunctive. So, right. I see there are two general categories. But you are reading and in the disjunctive. I think that's right, yes. Okay, so, but you are reading or as conjunctive. Well, I think that's right. Again, the way where I come out is that there are two categories. Well, I don't understand. That's all. I think, Your Honor. Can you seek admission without seeking adjustment of status under 1153A? I don't think so. I believe that's just the general provision for adjustment. I'm sure Petitioner's counsel will correct me for a moment, but I believe that the admission and adjustment is all kind of a package. Well, then why do they say admission or adjustment? Well, because I think to adjust under 1153, you need to be admitted first. So, in other words, some people might need to get admitted in order to get adjusted. Well, I thought you were arguing back to your root, was that admissibility is irrelevant for sure. Now I'm really confused. Well, admissibility is irrelevant to this case. Well, you say it's irrelevant because the statute says it's irrelevant, but it's, you know, the sequence of steps. We wind up into a waiver provisor that uses the word admission. Well, then let me answer Your Honor's question directly. The reason when you say we're into the waiver provision, the waiver provision is in there, but it's our view that it has no applicability to this case, that is to say a cancellation case, because all the waiver provision does is it waives inadmissibility. Petitioner's problem doesn't have anything to do with inadmissibility. Petitioner's problem is that he lacks good moral character. So even if he could qualify for that D-11 waiver, all that would get him is it would get him over an inadmissibility bar, which again is nonexistent because he doesn't need to show inadmissibility under 1229, but his problem is that it does not get him over the good moral character bar. It's a waiver of inadmissibility. It's not a waiver of good moral character, and that's why that language that I articulated at the beginning, whether or not admissible, they're separate things. And so he can get a waiver of inadmissibility, but it doesn't do good because he can't get over the good moral character bar. Would you give us an example of somebody who wants to take advantage of the family waiver, forget cancellation of removal or whatever? Sure. You want to get the family waiver, but you've also are an alien smuggler. Okay. Okay? Hypothetical. I seek a hypothetical. Let me finish. So then I want this individual to understand how this would work if they were seeking admission or adjustment of status. Would those be two different things they might be doing if they wanted to get a waiver for being an alien smuggler? I think that that's right because I think... So who would that person be? Give us what kind of person would be an alien smuggler not seeking cancellation of removal so he needs this waiver to get in? Well, it would be someone who is not in removal proceedings. The reason why the petitioner had to seek adjustment through the 1229B process is because he was in removal proceedings. In Your Honor's hypothetical, you could envision a scenario where someone is not in removal proceedings. In other words, someone is here, here legally, and his father who, say, is a qualifying relative, a citizen, says, I want to adjust you as under the 1153 provision. I want to adjust you so... He's here legally or illegally? Well, I would think... He has to be illegal. I think it would have to be illegal. So he's come across the border and he came illegally, but then he goes back and gets his wife, but his father wants to adjust his status. Right, although I think you also could apply, I'd have to double check, but I think you could also apply from outside the country. So, in other words, you could have someone in the U.S. who says, I want to bring someone in from my home country and I want to adjust status pursuant to this provision. Don't you get plenty of adjustment of status applications from people who are legally here with student visas or something like that? Absolutely. Yes, you do. So I think that would answer it. I mean, obviously, there's also the other category, people who would be eligible for the waiver, that is to say, lawful permanent residents, perhaps who are returning. Another example I would think of would be an LPR who is returning and, for instance, has his wife hidden in the backseat and gets stopped at the border and they say, okay, we're going to begin removal proceedings because you LPR are inadmissible because you're an alien smuggler, and he would say, wait a minute, I'm applying for this waiver. Mr. Dupree, as hard as we're struggling with the statutes, I'm assuming, though, that what you're arguing is, and this still would be conceivably possible, that the plain language is clear, that it's unambiguous. That might be a tough sell at this point. No, but I'm taking that you're arguing that, that essentially good moral character and admissibility are apples and oranges. Yes. And that the waiver cannot, even if you qualify for the waiver, cannot confer on a person who falls into this class that defeats good moral character, cannot convey good moral character. Now, assuming I were to accept that, albeit difficult statutory schemes, but that it's clear, then would, if we find it to be clear, then the BIA opinion here originally, would that be then entitled to Chevron deference? Well, if the court found it to be clear, I think that would make this a Chevron step one case. Step one. So, in other words, we wouldn't even reach step two. Okay. And that is our preferred outcome. Okay. If it's not clear, then it would be a step two, and it would have to be Skidmore in this situation. I think that's right, because the board decision under review is unpublished, and I'm certainly not aware of any published board decision that directly addresses this issue. But notwithstanding our last 40-odd minutes, we do think that this is a plain language case. We do think that this court can and should resolve it under Chevron step one, simply because this statute is inapplicable to good moral character determinations, and waiver provision is inapplicable to good moral character. Let me ask you this, because this bothers me. If Mr. Sanchez is considered a smuggler because he went back to Mexico and helped his wife to be smuggled across the border, is that right? That's right. So a man who wants to bring the family together and smuggles his wife here, he's a person who is not of a good moral character. That's right. That's right. That seems crazy to me, but I would think he'd be a person of good moral character. Well, Judge Pragerson, I don't think anyone is faulting Mr. Sanchez for wanting to be with his wife. I think the problem lies in the methods that he used to ensure family. He's a bad guy. He's a man of bad moral character. Try that out with a man on the street and see what they have to say about that. Well, again, his fault is not wanting to be with his wife. His fault is in the methods that he employed. Do you mean he could have stayed with his wife in Mexico if he wanted to be with his wife? I don't see why not. So, I mean, the difference between him and the other guy you talked about is he was unlucky enough to land in cancellation proceedings. And you could have somebody else who's literally in the same posture with some other relative who didn't find themselves in the net, and they come in, but they're still an alien smuggler because that's how their wife got in. So what's the difference between being lucky and unlucky? It just seems to be that he got into proceedings sooner than the other guy might have. Well, I would respectfully disagree with the notion that he was caught in the net or found himself in. These proceedings were instigated at his request, essentially. What brought Mr. Sanchez to the government's attention? I obviously haven't been involved in this case throughout, and I'm sure my colleague will correct me if I'm mistaken, but the way that these proceedings evolved was that they began when Mr. Sanchez filed an asylum petition. That's how he came to the government's attention. He filed an asylum petition that said, I can't be returned to Mexico because I'll be persecuted as a symbol of American capitalistic success. Once he did that, the government scheduled an asylum interview for him, and he never showed. And at that point, when you file something with the government, you say, I'm here illegally, I seek asylum, and then you don't show for your interview, that results in a referral to a removal proceeding. And when that began, Mr. Sanchez, and not a surprise, we see this pattern very often, Mr. Sanchez immediately withdrew his asylum petition and applied for cancellation. But the point remains the same, doesn't it? Because let's suppose that he had lain low and hadn't initiated anything. Then he had moved for adjustment of status. That person, who has not brought either by involuntary means or voluntary means, been put into a cancellation of removal proceeding, would be found to have a bad moral character for doing what someone who had done the identical thing but had escaped the attention of the immigration authorities, and that he would get a waiver for that very kind of conduct. Well, Judge Fischer, I'm not sure that he would have had many routes to apply for adjustment of status. I'm just, well... Because he, of course, was here illegally, without documentation, and so the quote-unquote normal route for adjustment of status, there would be an insurmountable bar, it would be the admissibility bar. Nonetheless, it would still be someone who had done the identical conduct. But they wouldn't be similarly situated. I mean, Mr. Sanchez was here illegally without any status. Yeah. But Mr. Sanchez, I suspect, was caught up in this whole conspiracy of notorios and parents' lawyers and all that, because somehow these people got the idea where they went to see someone and wondered, well, what can I do to improve my status? They'd go to a notorio or they'd get one of these, wherever it was. The whole situation is pretty rotten. And they'd say, well, the thing to do is, well, you have to apply for asylum. So you had hundreds and hundreds of people apply for asylum. And then, well, they didn't have a chance in the world of getting this political asylum for any other reason from Mexico. And then that brings them to the attention of the federal authorities. And then their goose is cooked. That's the way it is, huh? Judge, perhaps you're not going to get any argument from me on the notorio system. I agree. And we allow that, the notorio system, to flourish and perpetuate. And the appearance attorney, because we allow disbarred lawyers to practice for the immigration court. So we've got a bad system, all told. I won't quarrel with a lot of your points there about the deficiencies in the system, Your Honor. I will note that recently we, that is to say the Department of Promulgated Regulations, to tighten up the performance, competence, professional standards of persons who appear before the U.S. Well, I know you did, but it was only very recently, very recently. That's right. So how could you come in? We know that was going on for years and years. So how can you come into the country then if the family waiver basically, it X's out your inadmissibility as an alien smuggler. So it takes that bar away from you. Okay. But you still need some other hook on which to adjust your status. Is that correct? Yes. Which would be a qualifying relative, for example. Exactly. Like a child or some other brother, sister, parent. Right. That's right. Okay. So is there any other way, if he's here illegally and he needs some way to adjust his status, I suppose if he were going to get some kind of special technology visa, he could try to get his status adjusted, but then they'd say, no, you're an alien smuggler. And then he'd say, but it was my wife, and then they'd say, okay, we might X that out then. Right. Is that how it would work? I'm trying to figure out what worth is this family visa thing. Well, I think Your Honor had it exactly right when you said that it X's out that ground of inadmissibility. I think the relevant question in a lot of these cases is would there be other grounds of inadmissibility. Sure. For example, in this case, it bears noting that Mr. Sanchez, the ground for removal was not alien smuggling. The ground for removal was he was here in an undocumented state. Correct. So in many cases, it's that ground of inadmissibility that will provide the predicate for removal. And the alien smuggling is just an additional ground for removal that can be waived. So it probably applies with most force in cases where someone is documented and is present and lawfully in this country, and the sole blemish, so to speak, on their record is the act of alien smuggling, and they could get the waiver in that circumstance. Counsel, I gather from your briefs that you are suggesting that we should overrule Moran and follow Khorasani in this context. Can we interpret the statute in such a way as you have been suggesting without overruling Moran? Is Moran's overruling a fundamental part of your case? It is, Judge O'Scanlan. I suppose technically the court could say that Moran was dictum, although of course we know that issue was engaged in the Sanchez case. I do think the best course for this court to eliminate any doubt or mystery would be to overrule Moran. So to the extent that it's dictum anyway, just distance ourselves from it? It's an academic point, I suppose, to the extent this court is revisiting Moran and whatever this court says obviously will trump the panel's view. Well, so I guess if I were to sum up your argument, albeit it might not seem fair, it might not seem sensible, but it's what Congress said, and they said it plainly. Well, I agree with the sensible and the plainly. And it's not an equal protection argument, and interpreting it that way, and because different applications allow for different instances, that would be consistent with ABB. Absolutely. I think ABB makes crystal clear that Congress is entitled to legislate different standards for relief or place different limits on eligibility for relief, particularly discretionary benefits. And when Congress makes those distinctions, as long as it passes a fundamental test of reasonableness, which I think this statute easily does, then this court should uphold it. I would note that the petitioner at no point has made any sort of equal protection challenge to this statute. So I don't think those sorts of arguments even before this court, nor do I think they would have merit in any event. I have a question, though. Even if he could get into the ‑‑ even if the waiver did apply in this, he doesn't contend that the two little I's. He's not arguing when he falls under it. Romanet. That's a Romanet. The Romanet or whatever. He's not claiming he qualifies under that. But even if we were to put him in the waiver and say that the waiver applies, does he qualify for it? To make sure I'm understanding Your Honor's question, if the waiver of ‑‑ if he could waive good moral character or ‑‑ Right. But does ‑‑ and you use the standards there. Does he even meet the ‑‑ does he even qualify for it here? Under the plain ‑‑ For suspension. Is that your point, Your Honor? For suspension. I think that's ‑‑ Well, he does not qualify because, again, he's not a lawful permanent resident. He's not applying under 1153. So he wouldn't qualify in any event. Of course, I think the easier way for this Court to resolve is simply to say that that waiver provision doesn't apply to good moral character determinations. But even if this Court were to say it does under the strict terms of the statute, that's exactly right. He doesn't fall within those categories in any event, and thus he would not qualify. But, counsel, it doesn't, your argument really suggests, and my colleague Judge Fischer enunciated that, doesn't your ‑‑ in a statute which only mentions six big E, which is 1101F3, we should only take the first provision of it when there is nothing in 1101FE that suggests that only the first provision of that is applicable? I mean, if I go to 1101FE and I look at the time ‑‑ types of things that I have to look at, it says described in two D, 6E, or 10A. And in those situations, then I go to 1182A6E, which is the one referenced, and I find Clause 1, or I, or I don't know how you say it, but that is one of the clauses there. That's in general, it says, I. And then III immediately comes forward and says, not applicable if D11 works. So how do I get out of not going to D11 under the situation? Because it's pretty clear they're only in the descriptions of the three, and 6E is one of them. Well, I think the way you address that issue, Judge Smith, is that the initial provision, the one that says an alien who engages in alien smuggling conduct is inadmissible. And then the waiver provision says that that inadmissibility provision does not apply if there's a family unity justification. So what the waiver provision says is that you are not inadmissible. So I think that it's certainly fair for this Court to look at what those other provisions of 6E say. That doesn't necessarily mean that all of them are relevant. I think it's entirely possible that. I missed something in what you just said, and it may mean I'm misunderstanding something important. Judge Smith said, when you look at little left, it says to look at 6E. Then you look at 6E, and Judge Smith asks, why not take all of E? Well, if you take all of E, then you get small Roman numeral 2 as well as small Roman numeral 1. And I thought that the reason not to take all of E was the date limitation in Roman numeral 2. So we never even had to talk about whether it was limited to inadmissibility. Well, you can often – The 1988 provision. Am I missing something there? Well, my response to Judge Smith was really focused on the third point, the D11 waiver provision. Well, I was interested in E for the moment, because that's what Judge Smith asked about. Well, and I was responding to the waiver provision in 6E Romanet 3. That was the waiver provision, the one that refers to D11. That's what I was responding to him on. I think Your Honor's question goes to Romanet 2. Correct. Right. And there, I think, Your Honor's point that you could distinguish that on grounds that the dates don't apply, that's permissible. It looks like an amnesty for people who did it a long time ago. That's fine. I would note, I think, my response to Judge Smith, I think, also addresses that point. But nonetheless, you could resolve it different ways. Well, if you're going to allow us to do – to take 6E and use I in general and have I amended for II, the special rule, how do you get around having it not also amended by III, waiver authorized? That's the problem. I mean, my colleague would suggest that once having met the date, it gets rid of the waiver authorized. But it seems to me our prior case law gave II its own effect, and now we have III. Why don't we give effect to it? Because it seems to relate to the same language in 1101FEF3. Right. I think the best way to analyze this, Judge Smith, is to look at the original reference, in other words, the statutory phrase that sends this Court to looking at 6E. And it describes aliens who are a member of the class who engaged in that conduct. So one way to resolve the issue is to say, look, if you engaged in that conduct, regardless of whether or not you could get a waiver of inadmissibility or not, if you're someone who engaged in the conduct, the list of offenses set forth in 6E, you're covered. That was the approach that the Gonzales-Gonzales Court used, which is to say Congress's cross-reference did nothing more than simply set forth, or shorthand, for setting forth a list of specified offenses, rather than reproduce the entire list every time it comes up in the code, to just say here's the list of offenses, here's where you can find it. And what the Gonzales-Gonzales Court said was it would be a mistake, then, to go beyond that and say by this near limited cross-reference, we're going to import the entirety of that section, particularly here, where the other provisions, even if the Court looks at them, again, they get back to waivers of inadmissibility, not waivers of ---- Right. But then I'm confused by your argument, because I first heard your argument not to make that argument, but to say, well, the waiver provision under 11 really just nixes inadmissibility, but that doesn't get you out of what 6E describes. But before you made that argument, we were trying to parse the language between whether it was an and or an or, seeking admission or adjustment. So I guess what I'm asking is, are you making the argument that even with the waiver, it doesn't apply, or that we need to get inside the waiver provision and march through the two or three categories, depending on how you categorize them? Well, certainly our threshold argument is that the Court need not parse the waiver provisions beyond saying these are all waivers of inadmissibility, and they don't help them with a good moral character. That's our threshold argument. Now, if the Court were to say, well, we think there's room here, there's some play in the joints, we think maybe we can transpose some of this into the cancellation context, then our fallback arguments, as it were, are, well, by the plain language of this, it doesn't qualify. I have two questions for you. I just want to make something clear. If we remove this moral character issue, right, then would he be eligible for cancellation of removal? I think he would, Judge Pregerson. Okay. All right, thanks. Is it correct that we do not have ‑‑ if there's ambiguity about whether E3 means that the waiver in E2, or the exception in E2, applies regardless of the limitations in 11? If there's ambiguity in that, it would be nice to give Aguirre a Guirre and Chevron deference, but I gather there's nothing to give it to. Is that correct? That's correct. Certainly, this Court, I think, typically only accords Chevron deference to published board decisions. I'm certainly not aware that the Board has addressed this in a published decision. Certainly, the Board's resolution of the case might be, in this particular case, might be entitled to a reduced form of deference. Again, I don't think this Court need reach that. I think it can just resolve it at Chevron step one. Yeah, I have one request, if you don't mind. Would you leave the citation to those new procedures that are now being followed in the Justice Department about disbarred lawyers and all that, tightening all the qualifications for people who are appearing before the IJs and the BIAs? Absolutely, I'll get that for you, Your Honor. I believe that it's still ‑‑ it's been issued as a proposed rule. I don't know if OMB has finally cleared the final version. I think that's going to happen soon. It's not in effect yet. I don't know. We promulgated the proposed rule fairly recently. I'm thinking six months, a year ago or so. I don't know that it's become final, but I'm not 100 percent sure. But I'll get you both the citation and the Federal Register as well as the status. Yeah, the proposed rule, yeah. Right. Or if you want to, you can fax me a copy. Okay. I'll be happy to do that, Your Honor. All right. Thank you. Thank you. Thank you. You've got another minute and a half left. Very briefly. Thank you, Your Honor. One quick point to make in terms of the eligibility. I think it's significant, although not perhaps legally. The immigration judge said, but for the good moral character, I would grant this case. There's sufficient hardship to the children. He was in a statutory straitjacket, and he said, I have no ‑‑ my hands are tied. Again, there was a certain irony that my esteemed colleague said, I made this statute unnecessarily complicated. I'm just as confused. I mean, I think this is a very confusing statute, a series of statutes, but I believe that Congress, as some of your honors are asking, in terms of the 212AD and so on, they're inviting you to gauge not complicated cross referencing. It's actually rather simple. You've got the grounds of ‑‑ you know, the grounds of invisibility and the waivers. I mean, it's not ‑‑ the Congress is not asking us to jump through too many hoops. The fact that it's not altogether coherent is not unprecedented in immigration law. So, you know, in conclusion, I mean, essentially, the rationale of St. Jesmarine should stand. In this particular case, this gentleman, but for this supposedly egregious behavior of bringing his wife to the United States, he would have been granted residency. So I would submit to that.
judges: Kozinski , Pregerson , O'scannlain, Rymer , Kleinfeld , Silverman, McKeown , Fisher , Paez , Callahan , R. Smith